IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TAJAY VAUGHN, | ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. 3:13-cv-0445 |
| SHARON TAYLOR, Warden, | ) ) | Judge Campbell |
| Respondent. | ) ) | |

## MEMORANDUM OPINION

Petitioner Tajay Vaughn, a prisoner in state custody at the Northeast Correctional Complex, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). The respondent has filed an answer in opposition to the petition, along with a complete copy of the underlying state-court record, and the petitioner has filed a reply. The petition is ripe for review and this Court has jurisdiction. For the reasons set forth herein, the Court finds that the petitioner is not entitled to relief.

I.     **PROCEDURAL BACKGROUND**

On February 11, 2010, the petitioner pleaded guilty in the Criminal Court for Sumner County, Tennessee to charges of aggravated burglary, especially aggravated robbery, and aggravated assault. Pursuant to the plea agreement, he was sentenced to 3 years' incarceration at 30 percent on the burglary conviction, 22 years' incarceration at 100 percent for especially aggravated robbery, and 3 years at 30 percent on the aggravated assault conviction, all sentences to run concurrently for an effective sentence of 22 years. The petitioner did not pursue a direct appeal of his conviction or sentence. However, on December 22, 2010, he filed a timely *pro se* petition for post-conviction relief in the state court, arguing, among numerous other claims, that his guilty plea was "unknowing, involuntary and unintelligently made" and that his attorney was ineffective during preliminary proceedings, at the plea stage, and at sentencing. (Post-Conviction Petition, ECF No. 17-1, at 17, 45–57.) Counsel was appointed and an amended petition was filed. Counsel argued in the amended petition that trial counsel was ineffective for failing to (1) investigate the petitioner's educational and psychological background, (2) obtain a psychological evaluation of the petitioner, (3) assert the petitioner's psychological and education background as mitigating factors during plea negotiations or during the

sentencing hearing, or (4) adequately explain the proposed guilty plea to the petitioner during plea negotiations or during the plea hearing, and that counsel's ineffectiveness resulted in a plea that was uninformed and unknowing. (ECF No. 17-1, at 107–09.) The trial court conducted a hearing on November 14, 2011 and entered a written order denying the petition on November 21, 2011. (ECF No. 17-1, at 112.)

The petitioner pursued an appeal, for which new counsel was appointed. (ECF No. 17-1, at 125.) On appeal, the petitioner's counsel argued that the trial court erred (1) in finding that the petitioner's guilty plea was knowing and voluntary; and (2) in ruling that trial counsel's failure to investigate mitigating information concerning the petitioner's marginal mental capacity, past mental history, and documented learning disabilities did not rise to the level of ineffective assistance of counsel. (ECF No. 17-5, at 7.) The trial court's decision denying relief was affirmed. *Vaughn v. State*, No. M2012-00151-CCA-R3-YiPC, 2012 WL 4142346 (Tenn. Ct. Crim. App. Sept. 19, 2012), *perm. appeal denied* (Tenn. Feb. 15, 2013).

Petitioner Vaughn filed his petition under 28 U.S.C. § 2254 in this Court on May 6, 2013. (ECF No. 1, at 16 (date of petitioner's signature).) The respondent has filed an answer along with a complete copy of the underlying state-court record. The respondent concedes that the petition is timely.

## II. STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the evidence presented during the guilty-plea and post-conviction hearings as follows:

*Guilty Plea*

At the guilty plea hearing, the State recited the factual basis for the Petitioner's plea as follows:

> The facts of this case are . . . that on May the 11th of 2009, in Sumner County, Tennessee, Portland, [the Petitioner], along with [his co-defendants,] drove from Nashville up to Portland at which time they entered the house of Mr. Anderson and his wife. . . .
>
> After entering the house . . .—while they were armed carrying—and masked, for the purpose of stealing drugs, money, and weapons, they entered the resident [sic]. [The Petitioner] went to the—the testimony would be he went to the back bedroom where Ms. Anderson was . . . at which time [the Petitioner] proceeded to violently beat her with his fists and with his weapon. She was hospitalized as a result of the beating that she took that night.
>
> During the course of this robbery a shooting took place—[the Petitioner] was not the shooter—where a lady was [shot] 10 times but lived.
>
> [The Petitioner and co-defendants] left the house. [The Petitioner] was a

passenger in the front seat of the car as they left. It's my understanding they were stopped on I-65 around Ridgetop by a White House officer. While waiting for backup, the car decided to drive away. At which time they drove away, a pursuit ensued all the way into Davidson County where a pretty violent wreck took place. . . .

[The Petitioner] gave a statement to authorities of his participation in this event. They recovered some of the merchandise that was taken from the residence.

Upon hearing the State's factual allegations, the Petitioner's counsel informed the trial court that the Petitioner did not agree with "some of the specifics" but nevertheless agreed that he was guilty of the charges to which he pleaded.

The Petitioner testified at the guilty plea hearing that he graduated from high school. He confirmed that he understood the convictions for which he was pleading guilty and their respective sentences, as well as the fact that the sentences would run concurrently. He acknowledged that he understood that he was waiving his right to a trial by jury where he could present a defense and cross-examine the State's witnesses; his right to have an attorney represent him at trial; and his right to an appeal and representation on appeal by an attorney. He also agreed that he currently was not taking any medications; that he was entering into his plea freely and voluntarily; that no additional promises were made in the formation of the plea agreement; and that no one was forcing him to enter into his plea.

Additionally, the following colloquy took place between the trial court and the [Petitioner]:

> Court: Good. Now, are you satisfied with the services of [trial counsel]?
>
> Petitioner: Yes, sir.
>
> Court: Do you believe that he's given you good advice and good representation here?
>
> Petitioner: Yes, sir.
>
> Court: Now, is there anything that you wanted him to do that he didn't do that was within his control?
>
> Petitioner: Get me a lesser sentence, but—
>
> Court: Okay. Do you understand that's outside of his control? That comes from over on this side of the court and he can't control that. Do you understand that?
>
> Petitioner: Yes, sir.

The trial court accepted the Petitioner's guilty plea. Before the conclusion of the hearing, trial counsel and the State also asked the Petitioner several questions on the record. The Petitioner acknowledged that trial counsel sent all of the paper discovery, played him his video and audio statements, and reviewed the preliminary hearing tape. The Petitioner confirmed that there was no other evidence of which he was aware that trial counsel did not show or provide.

*Post-conviction*

The Petitioner subsequently filed for post-conviction relief on December 22, 2010, alleging that he had received ineffective assistance of counsel in conjunction with his guilty

plea and that his plea was constitutionally infirm. Specifically, the Petitioner argued that his appointed attorney ("Trial Counsel") was ineffective in not requesting a psychological evaluation and not seeking mitigation of the Petitioner's charges or sentence in light of the Petitioner's learning and psychological issues. The Petitioner's mother and Trial Counsel testified at the post-conviction evidentiary hearing.

Trial Counsel testified that he had practiced law since October of 2000, and approximately half of his practice was criminal defense. In criminal defense cases, his custom was to prepare a detailed case summary for each of his clients. He requested the client's case file and discovery, and then he prepared and sent a duplicate copy of all the information he had obtained to his client. Once both he and the client have had sufficient time to review the information, he met with his client to discuss their plan for handling the case. Trial Counsel stated that, pertaining to this case, he met with the Petitioner four times prior to the Petitioner entering a guilty plea. In those meetings, they reviewed the case and watched the Petitioner's recorded statement. Trial Counsel also met with the Petitioner on the morning of the guilty plea and reviewed and discussed the Petitioner's plea agreement as well as the rights the Petitioner was waiving.

Trial Counsel's file indicated that the Petitioner was a graduate of Maplewood High School, and Trial Counsel confirmed that the Petitioner and his mother had attested to this fact. However, neither the Petitioner nor his mother ever told Trial Counsel that the Petitioner was a special education student. Trial Counsel only remembered the Petitioner's mother informing him that the Petitioner had Attention Deficit Hyperactive Disorder ("ADHD"). Trial Counsel did not believe, however, that having ADHD would keep the Petitioner from understanding the charges against him and the plea process. Post-conviction counsel showed Trial Counsel a document indicating that the Petitioner's intelligence quotient ("IQ") was eighty. Trial Counsel stated that it surprised him that the Petitioner had such a low IQ because the Petitioner "was always very . . . knowledgeable of his case." Trial Counsel acknowledged that he would have attempted to use this information about the Petitioner had he been aware, but he insisted that the Petitioner never brought it up. He added, "I didn't think there was any question of whether or not he could appreciate the rightfulness or wrongfulness of his actions."

Trial Counsel also stated that knowing the Petitioner's low IQ would not have changed the way he interacted with his client. He testified, "I try to explain everything as basic as you can to everybody and not to assume that they're going to understand anything." He added, "Obviously, in this case, it didn't really matter a whole lot what I said to him. It was more important about what he said to the police. . . . [The Petitioner and co-defendants] were caught red-handed." In light of the State's overwhelming proof, Trial Counsel thought that the best effort he could make on behalf of the Petitioner was "to get any mercy" from the State. He believed this case to be a "slam-dunk conviction" and did not think that the trial court would show any mercy in sentencing based on many potentially applicable enhancement factors. Furthermore, Trial Counsel stated that "this was the most trouble [the Petitioner] had ever been in but he had been in trouble before. It wasn't his first rodeo. I felt like he understood everything we were doing in the process."

Trial Counsel remembered that the Petitioner's second interview with police officers was the only instance when the Petitioner did not seem to understand the situation. According to Trial Counsel, the Petitioner was perfectly coherent in the first interview when he relayed the sequence of events of the robbery. Then, the Petitioner came back on a second occasion and, in Trial Counsel's opinion, "was malingering. He's faking that he can't remember and he alleges a concussion." The Petitioner requested that Trial Counsel move to suppress his first statement due to a concussion, but Trial Counsel told the Petitioner that, given that his first statement was "clear as a bell," filing a motion to suppress would appear as if the Petitioner were "faking and malingering."

Trial Counsel noted that the State's first plea offer was for twenty-four years and that he was able to negotiate it down to twenty-two years. He read several letters from the Petitioner, including the following letter that stated:

> Thank you for talking to me about my case today. You really made me feel more comfortable about the situation I'm in. I was really feeling like my last lawyer was out to sabotage my case. You really made a lot of sense to me today. You explained things to me in a way that had not been done before. My life is in your hands. For the first time since this incident occurred I feel like the person fighting for me actually cares. I understand that this is a very serious matter.

Audrey Vaughn, the Petitioner's mother, testified that she first realized her son had emotional or psychiatric problems when the Petitioner was approximately six years old. She came home to find that the Petitioner had stuck thumb tacks into the flesh of his leg, from his thigh to his knee. She took him to Vanderbilt and requested a psychiatric evaluation on the Petitioner but was refused the evaluation. Ms. Vaughn eventually placed him in a thirty-day facility called First Family. She stated that throughout middle school and high school the Petitioner was in the Modified Individual Program due to his ADHD and his learning disability. According to Ms. Vaughn, the Petitioner did not want people to know that he was in special education classes. She also testified that, after hearing the letters from the Petitioner to Trial Counsel, she believed "someone else had to help him with those letters because the wording are [sic] not words that he could either spell or understand, to my knowledge."

Ms. Vaughn thought that it would be possible for someone who only spends a short period of time with her son to not realize the Petitioner's mental issues because the Petitioner could hide it from that person. On cross-examination, she stated that although the Petitioner struggles with reading he "would talk to you until you were blue in the face." The State asked whether the Petitioner could "carry on an intelligent conversation," and Ms. Vaughn responded, "he can carry on a conversation and a lot of the words that he would use would be out of place, but he would finally get his intent across to you."

*Vaughn*, 2010 WL 4142346, at *1–4.

The appellate court also summarized the post-conviction court's conclusions, stated from the bench at the conclusion of the hearing, as follows:

At the conclusion of the hearing, the post-conviction court stated:

> I can tell you on the front end, [Petitioner], that looking at the facts in this case, and the evidence in this case, you can be thankful for the job that your attorney did, and that you only got 22 years at a hundred percent for the crime that you committed.

The post-conviction court found it hard to believe that the Petitioner did not understand the nature and circumstances surrounding his guilty plea based on his extensive, forty-page petition for post-conviction relief. Although the Petitioner had an IQ of eighty and a diagnosis of ADHD, the post-conviction court was "impressed" by Trial Counsel's representation of the Petitioner. The court stated:

> [Trial Counsel] stated that [the Petitioner] was no different from any others that he had represented. He explained everything as basically as he could. That he always explained in very basic terms. He explained the issues that he had to deal with. That, I believe he said, that the defendants were caught red-handed. It was a slam-dunk case. The female victim was shot many times. This was a home invasion. There were four people. There were guns. And in his opinion what he received by

way of a guilty plea was better than what he would receive at a trial and I confirm that today, too.

The initial offer was 21 years at a hundred percent plus three years at 30 consecutive. [Trial Counsel] was able to get the offer down to 22 at a hundred. . . .

. . . .

I thought very compelling to me was the letters that the [Petitioner] wrote [Trial Counsel] on January 20, 2010, December 14, 2009, January 13, 2010. He appeared to be a good communicator. They were [very well] written, raised good issues. The [Petitioner's] mother says these were things that her son couldn't write, but I beg to differ with her because he was able to discuss these issues with his attorney. The attorney felt like there w[ere] no communication issues.

The only note where [Trial Counsel] stated that the [Petitioner] possibly didn't understand something was in the second interview that he had with the [Petitioner], and [Trial Counsel] was very clear that he felt like that on the day that his client was malingering. . . . [Trial Counsel] felt like this was an attempt to try to get [the Petitioner's] statement suppressed. Which goes to showing me that [the Petitioner] knew the circumstances and the evidence against him.

Thus, as to the Petitioner's plea being knowing, intelligent, and voluntary, the postconviction court found "overwhelmingly" that the Petitioner fully understood the circumstances surrounding his decision to enter a guilty plea. The court, accordingly, denied relief on this issue.

Second, turning to the Petitioner's ineffective assistance of counsel claim, the postconviction court found "absolutely no basis in the evidence in this case where [Trial Counsel] was deficient in any extent. He thoroughly reviewed the evidence as thoroughly as any attorney could. He thoroughly communicated with the [Petitioner] as thoroughly as any defense attorney could."

The post-conviction court accredited Trial Counsel's belief that the Petitioner had no problem communicating with Trial Counsel. The court found that the Petitioner failed to prove by clear and convincing evidence that Trial Counsel was in any way deficient in his representation of the Petitioner. Moreover, the court stated, "[t]o the contrary, I find that he did an exemplary job in representing you."

Accordingly, the post-conviction court found it unnecessary to make a finding regarding any prejudice that the Petitioner suffered. Therefore, the court denied the Petitioner post-conviction relief. The Petitioner timely appealed, arguing that trial counsel was deficient in his representation of the Petitioner and that his plea was not knowing, intelligent, or voluntary.

*Id.* at *4–5.

### III. ISSUES PRESENTED FOR REVIEW

In his petition for habeas corpus, Vaughn asserts the following claims for relief:

1. That trial counsel was ineffective because he (a) assumed that the petitioner graduated from high school and failed to discover that the petitioner was in special-education classes while in public school due

to a learning disability, psychological problems, and borderline IQ; (b) failed to obtain a psychiatric evaluation of the petitioner; (c) failed to present the petitioner's psychiatric and educational history as mitigation evidence during plea negotiations or sentencing; (d) failed to adequately explain the proposed guilty plea to the petitioner during the plea negotiations; and (e) failed to adequately explain the proposed guilty plea to the petitioner during the plea submission hearing.

2. That the guilty plea was unknowingly, involuntarily, and unintelligently made.

3. That the petitioner received ineffective assistance of counsel during post-conviction proceedings, because post-conviction counsel argued only regarding the educational and psychological mitigation issues, and waived all other ineffective-assistance claims on appeal.

## IV.  STANDARD OF REVIEW

### A.  Defaulted or Unexhausted Claims

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once his federal claims have been raised in the highest state court available,[1] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

---

[1] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A fundamental miscarriage of justice results when one who is "actually" innocent is convicted. *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011).

**B.     Standard of Review of Fully Exhausted Claims**

Even when a petitioner's application for a writ of habeas corpus raises only federal constitutional claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2) resulted in a decision that was based on an unreasonable determination of the facts in
>  light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this Court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

With these principles in mind, the court will turn to the examination of the claims raised in Vaughn's petition for habeas relief.

## V. ANALYSIS AND DISCUSSION

### A. Claims 1(a) through 1(c): Ineffective Assistance of Counsel

The respondent concedes that claims 1(a), 1(b), and 1(c) were fully exhausted in the state courts. These claims, as set forth above, are that trial counsel was ineffective in that he (a) failed to discover that the petitioner was in special-education classes while in public school due to a learning disability and received an attendance certificate rather than an actual high school diploma, or to discover that the petitioner had possible psychological problems and a borderline IQ; (b) failed to obtain a psychiatric evaluation of the petitioner; and (c) failed to present the petitioner's psychiatric and education history as mitigation evidence during plea negotiations or sentencing.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved

an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

The state court, with regard to the petitioner's first three ineffective-assistance claims, correctly articulated the standard established by *Strickland* and discussed its import at some length. *See Vaughn*, 2012 WL 414236, at *6–7. In applying *Strickland* to the facts before it, the court reasoned as follows:

> Trial Counsel's testimony established that Trial Counsel communicated with the Petitioner extensively and visited him on four occasions prior to the plea hearing, that Trial Counsel thoroughly reviewed the charges and the evidence with the Petitioner, that Trial Counsel discussed with the Petitioner the gravity of the charges and the potential ramifications of proceeding to trial, and that Trial Counsel successfully reduced the plea bargain offer and explained it to the Petitioner as well as the rights the Petitioner would waive. Although the Petitioner presented evidence regarding his low IQ and his enrollment in special education courses, Trial Counsel was completely unaware of either fact. The Petitioner's mother did not inform Trial Counsel about these issues and, in fact, told him only that the Petitioner had ADHD. Moreover, Trial Counsel stated that he had no trouble communicating with the Petitioner but that he nevertheless explained everything to the Petitioner using the most basic of terminology.

*Vaughn*, 2012 WL 4142346, at *7. On the basis of this evidence, the Tennessee Court of Criminal Appeals, like the trial court, concluded that the petitioner had failed to establish that his trial counsel's performance was deficient and therefore did not even reach the prejudice prong of *Strickland*. *Id.*

This Court cannot find that the state court's decision involved a unreasonable application of the *Strickland* standard. The petitioner himself did not testify at the post-conviction hearing, so there was effectively no competent evidence to rebut trial counsel's testimony that he reasonably believed he had communicated well with the petitioner and had carefully explained every step of the proceedings to him.

Further, even though the petitioner's mother testified, the evidence was that neither she nor the petitioner ever informed trial counsel that the petitioner had had psychiatric problems from a very young age or that he had any learning disability other than ADHD. The petitioner's mother conceded that the petitioner was adept at concealing his disability. From this evidence, it was reasonable to conclude that trial counsel was not ineffective for failing to conduct a more thorough investigation into the petitioner's educational and psychological history. Further, although neither the Court of Criminal Appeals nor the post-conviction court reached the question of prejudice, the latter made it quite clear that evidence of the petitioner's IQ and possibly psychological problems would not have had any effect on his sentence, and that the petitioner was lucky to have received the sentence he did.

The petitioner is not entitled to relief on the basis of these claims.

### B.     Claim 2: That the Guilty Plea Was Not Knowing and Voluntary

The petitioner appears to be arguing that his counsel's ineffectiveness in failing to investigate the petitioner's intellectual and psychological deficiencies somehow resulted in a plea that was not knowing and voluntary. (*See* ECF No. 1, at 9–12.) The respondent concedes that this argument was fully exhausted in the state courts but argues that the state courts' resolution of the claim was not contrary to and did not involve an unreasonable application of the clearly established federal law.

The Tennessee Court of Criminal Appeals, in reviewing this claim, found that the petitioner had "failed to provide any argument or case law separate from his ineffective-assistance claim in support of this argument." *Vaughn*, 2012 WL 4142346, at *8. The court therefore found that the petitioner had failed to prove by clear and convincing evidence that his guilty plea was "constitutionally infirm." *Id.* From there, the court correctly referenced the relevant case law and the federal standards governing the constitutionality of a plea agreement:

> To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. *See Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, . . . *Boykin*, 395 U.S. at 244[], and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. . . . *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

*Vaughn*, 2012 WL 4142346, at *8 (some citations omitted). The court then pointed to the ample evidence in the record supporting the trial court's conclusion that the petitioner was able to understand the nature and

circumstances surrounding his plea, and concluded that the evidence did not preponderate against the post-conviction court's findings in that regard. *Id.*

The state court's resolution of this claim was not contrary to and did not involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. As the respondent argues, the petitioner's claim that his guilty plea was not knowing and voluntary was based entirely on his ineffective-assistance claims, which the state courts found to be meritless. Moreover, the petitioner's own testimony at the plea hearing confirmed that he understood the convictions to which he was pleading guilty and the sentence that would be imposed, as well as the collateral consequences of pleading guilty. The petitioner is not entitled to relief on the basis of this claim.

### C. Claims 1(d) and 1(e): Ineffective Assistance of Counsel

The petitioner also claims that his trial counsel was ineffective insofar as he failed to adequately explain the proposed guilty plea to the petitioner during the plea negotiations or during the plea submission hearing "in light of Petitioner's psychological and education history." (ECF No. 1, at 5.) Although these claims were raised in the amended post-conviction petition filed by counsel (ECF No. 17-1, at 108) and thoroughly explored during the petitioner's post-conviction hearing (*see* ECF No. 17-2, at 56–59), they were not presented in the petitioner's appeal to the Tennessee Court of Criminal Appeals. Because they were not presented to the state's highest court of review, they were not fully exhausted. The petitioner does not have the ability to bring a second appeal or a second post-conviction petition. Tenn. Code Ann. § 40-30-102(c). The petitioner does not argue that any of the circumstances enumerated in Tenn. Code Ann. § 40-30-117(a) permits him to re-open his initial post-conviction petition in the Tennessee courts. Accordingly, the claims are procedurally defaulted. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

Because the claims are procedurally defaulted, they are barred from review in this Court unless the petitioner can establish cause for the default and resulting prejudice, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The petitioner does not argue that he is actually innocent of the crimes of conviction, but he does appear to argue that the ineffective assistance of

his post-conviction counsel constitutes "cause" for the default in his case, relying on the Supreme Court's recent holdings in *Martinez v. Ryan*, 566 U.S. ----, 132 S. Ct. 1309 (2011), and *Trevino v. Thaler*, 569 U.S. ----, 133 S. Ct. 1911 (2013). This Court has already addressed the issue and concluded that the decisions in *Martinez* and *Trevino* do not apply to the Tennessee courts. *See Abdur'Rahman v. Carpenter*, No. 3:96-0380, 2013 WL 3865071, at *4–6 (M.D. Tenn. July 25, 2013) ("Unlike defendants in Texas, defendants in Tennessee are not faced with a system in which it is 'highly unlikely' that they will have a 'meaningful opportunity' to raise a claim of ineffective assistance of trial counsel during the direct appeal process.").

Moreover, even if *Martinez* and *Trevino* were extended to Tennessee courts, the petitioner would not be entitled to relief, first because the defaulted claims at issue here were not defaulted at the initial-review phase: As set forth above, they were in fact raised in the petitioner's post-conviction brief, explored at the hearing, and addressed by the post-conviction court in its oral decision from the bench. The default occurred when appellate post-conviction counsel failed to (or chose not to) present the claims to the Tennessee Court of Criminal Appeals in the post-conviction appeal. The Supreme Court has never held that ineffective assistance of *appellate* post-conviction counsel may constitute "cause" sufficient to overcome a claim defaulted during the post-conviction appeal.

Second, the petitioner has not argued that he was actually prejudiced by the alleged constitutional error, that is, the failure to raise these claims in the post-conviction appeal, and this Court concludes that this purported failure was not prejudicial. The Tennessee Court of Criminal Appeals considered the petitioner's other ineffective-assistance claims and his claim that his plea was not knowing and voluntary. Because the state court reasonably concluded that the plea was knowing and voluntary and that trial counsel was not ineffective for failing to further investigate the petitioner's educational and psychological history, as a matter of logic the court could not have concluded that trial counsel was ineffective for failing to adequately explain the proposed guilty plea to the petitioner in light of his alleged limitations. The petitioner therefore could not have been prejudiced by his appellate post-conviction counsel's failure to make such a claim.

The petitioner is not entitled to relief on the basis of these claims.

### D. Claim 3: Ineffective Assistance of Post-Conviction Counsel

By statute, the ineffective assistance of post-conviction counsel does not constitute grounds for habeas relief. 28 U.S.C. § 2254(i). Even if that were not the case, the Supreme Court has long held that

"[t]here is no right to counsel in state post-conviction proceedings" and therefore no right to *effective* post-conviction counsel. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted). Contrary to the petitioner's assertions, the *Martinez* and *Trevino* opinions did not abrogate that rule. Rather, the Supreme Court recognized that the ineffective assistance of post-conviction counsel may, in very limited circumstances, provide "cause" for the procedural default of a claim of ineffective assistance of trial counsel. *Martinez*, 132 S. Ct. at 1315–19.

In short, the ineffective assistance of post-conviction counsel does not provide a cognizable ground for habeas relief. The petitioner is therefore not entitled to relief on the basis of this claim.

**VI.     CONCLUSION**

For the reasons set forth herein, Tajay Vaughn's petition under § 2254 will be denied and this matter dismissed with prejudice. An appropriate order is filed herewith.

_____
Todd Campbell
United States District Judge